UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

WILFREDO MATOS and SAUL LOPEZ GONZALEZ,

                Plaintiffs,

-against-

738 RESTAURANT CORP.; G. DULI CORP.; GUS
DOULIS, individually; JOHN KAPETANOS,
individually,

                Defendants.

------------------------------------------------------------x



Judge Hellerstein

08 CV 0979

COMPLAINT

**JURY TRIAL DEMANDED**

RECEIVED JAN 30 2008 U.S.D.C. S.D.N.Y. CASHIERS

       Plaintiffs Wilfredo Matos and Saul Lopez Gonzalez ("Plaintiffs"), by their attorneys Make the Road New York, Inc., allege as follows:

### NATURE OF THE ACTION

       1.      This is an action to recover unpaid wages, damages, and interest due to Plaintiffs by Defendants. For approximately ten years, Plaintiffs were drastically underpaid for their work in Euro Diner, a chain of popular Greek restaurants owned and managed by Defendants.

       2.      Plaintiffs worked as kitchen and janitorial staff at Euro Diner. Both plaintiffs were required to work mandatory overtime, often seven day weeks, totaling 52 to 60 hours per week. Neither Plaintiff received overtime premium pay for a workweek longer than 40 hours, as required by federal and state law. Plaintiff Saul Lopez was also systematically denied the daily spread-of-hours supplement mandated by New York State Labor Law on the days he worked more than 10 hours. For the last year and a half of Plaintiff Wilfredo Matos' employment, he was paid as little as $1.92 per hour, forcing him to live in extreme poverty despite long hours of work.

1

3.  Plaintiffs, by their attorneys, seek their unpaid wages, liquidated damages, interest, and attorneys' fees pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and New York Labor Law, Article 6, 190 *et seq.*, and Article 19, 650 *et seq.*

## JURISDICTION AND VENUE

4.  This Court has jurisdiction over Plaintiffs' claims under FLSA pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b). The court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

5.  Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 as a substantial part of the events giving rise to the claims occurred in this district.

6.  Plaintiff Saul Lopez Gonzalez consents in writing to be a party to this action pursuant to 29 U.S.C. § 216(b). His written consent is attached hereto and incorporated by reference.

7.  Plaintiff Wilfredo Matos consents in writing to be a party to this action pursuant to 29 U.S.C. § 216(b). His written consent is attached hereto and incorporated by reference.

## STATEMENT OF FACTS

**A.   PARTIES**

8.  Plaintiff Saul Lopez Gonzalez is an adult individual residing in Queens, New York.

9.  Plaintiff Wilfredo Matos is an adult individual residing in Brooklyn, New York.

10. Plaintiffs worked at Defendants' restaurant, Euro Diner, located at 738 Eighth Avenue, New York, New York 10036.

11. "Euro Diner" was the trade name of 738 Restaurant Corp.

12.     738 Restaurant Corp. is an active domestic business corporation, organized under the laws of New York, with its principal place of business located at 738 Eighth Avenue, New York, NY 10036.

13.     738 Restaurant Corp. was incorporated in the State of New York on July 17, 1996.

14.     On information and belief, Defendant 738 Restaurant Corp. is a for-profit enterprise which engaged in commerce that generated more than $500,000 in gross revenues at all times relevant herein.

15.     On information and belief, Defendant Gus Doulis is an adult individual currently residing in the county of Nassau, New York.

16.     At all relevant times after July 17, 1996, Defendant Gus Doulis operated and held an ownership interest in 738 Restaurant Corp.

17.     During the relevant time period, Defendant Doulis was Plaintiffs' employer.

18.     During the relevant time period Defendant Doulis had control over Plaintiffs' wages, hours, and working conditions.

19.     During the relevant time period Defendant Doulis had the power to hire, fire, and discipline employees.

20.     On information and belief, during the relevant time period, employment records at Euro Diner were maintained by Defendant Doulis.

21.     On information and belief, Defendant John Kapetanos is an adult individual currently residing in the county of Nassau, New York.

22.     On information and belief, from July 17, 1996 through sometime in 2006, Defendant John Kapetanos held an ownership interest in 738 Restaurant Corp.

23.     On information and belief, Defendant John Kapetanos was a majority shareholder in 738 Restaurant Corp.

24. On information and belief, John Kapetanos made financial investments in 738 Restaurant Corp.

25. From July 17, 1996 through sometime in 2006, Defendant Kapetanos was Plaintiffs' employer.

26. On information and belief, Defendant Kapetanos had significant operational control over Defendant 738 Restaurant Corp.

27. On information and belief, John Kapetanos had control over restaurant expenses, including employee wage rates.

28. On information and belief, John Kapetanos owned a portion of the equipment used for the work performed at Euro Diner.

29. On information and belief, Defendant Kapetanos spent several hours each week supervising business at Euro Diner.

30. On information and belief, Defendant Kapetanos received monthly sums of $10,000 from Defendant 738 Restaurant Corp.

31. On information and belief, Defendant Doulis was typically the individual who made these payments.

32. On information and belief, Defendant Kapetanos withdrew his investment interest in 738 Restaurant Corp. sometime in 2006.

33. Defendant G. Duli Corp. is an active domestic business corporation, organized under the laws of New York, with its principal place of business located at 738 Eighth Avenue, New York, New York 10036.

34. G. Duli Corp. was incorporated in the state of New York on September 5, 2006.

35. On information and belief, at all relevant times after September 5, 2006, "Euro Diner" was the trade name of G. Duli Corp.

36. At all relevant times after September 5, 2006, Defendant Gus Doulis owned and operated G. Duli Corp.

37. In or around August 2007, Euro Diner closed its doors to the public.

**B. PLAINTIFFS' WORK FOR DEFENDANTS**

38. Plaintiffs worked as assistant cooks, cooks, bussers, dishwashers, and kitchen aides at Euro Diner.

39. They were required to cut and prepare food for customers, as well as to keep both kitchen and restaurant organized and clean.

40. Saul Lopez Gonzalez worked at Euro Diner from approximately July or August 1997 through approximately June 2007.

41. For the bulk of his employment, Mr. Lopez Gonzalez worked the night shift at Euro Diner.

42. His regular schedule required him to work 10 or more hours per day, 6 days per week.

43. Occasionally, when other workers were unavailable on Mr. Lopez Gonzalez's day off, he worked 7 days per week.

44. Mr. Lopez Gonzalez was promised at hire by Gus Doulis that his regular rate of pay would be $10.00 per hour.

45. Mr. Lopez Gonzalez never received overtime premium pay for hours exceeding 40 in a given week.

46. Mr. Lopez Gonzalez never received spread of hours pay, or an extra hour of pay at the minimum wage rate, when he worked more than 10 hours in a day.

47. Mr. Lopez Gonzalez never received tips for his work at Euro Diner.

48. During his employment at Euro Diner, Mr. Lopez Gonzalez never received a 45-minute meal break at the mid-point of his shift.

49. Mr. Lopez Gonzalez was discharged from his job at Euro Diner in June 2007.

50. Wilfredo Matos worked at Euro Diner from approximately June 1997 through approximately June 30, 2007.

51. For the bulk of his employment, Mr. Matos worked the daytime shift at Euro Diner.

52. His regular schedule required him to work 7 to 8 hours per day, 7 days per week.

53. Mr. Matos was promised at hire by Gus Doulis that he would receive a flat weekly wage for the hours he worked.

54. From approximately June 1997 through some time in 2000, Mr. Matos was paid $350 per week.

55. From approximately 2001 until approximately January 2006, he was paid $550 per week.

56. There were two breaks in Mr. Matos' employment at Euro Diner. The first was for two to three weeks in 2001. The second was for two to three weeks in February 2007.

57. From approximately January 2006 to the end of his employment, he was paid only $100 - $300 per week.

58. This pay rate resulted in an effective hourly rate of $1.92 to $5.77 per hour without any overtime premium.

59. Mr. Matos was discharged by Gus Doulis on approximately June 30, 2007.

60. After discharging Mr. Matos, Defendant Doulis told Mr. Matos that he owed him $13,600 in back wages, based on the weekly salary. Defendant Doulis promised Mr. Matos that he would pay these wages.

61. However, Defendant Doulis paid Mr. Matos only $900.00 in the weeks following the discharge.

62. Mr. Matos never received overtime premium pay for hours exceeding 40 in a given week.

63. Mr. Matos never received tips for his work at Euro Diner.

64. On information and belief, during the time that Plaintiffs were employed by Defendants, Defendants did not maintain in the workplace a display containing notices of employee rights to receive the minimum wage and overtime at a rate of one and one-half their regular rate, as required under both FLSA and New York Labor Law.

65. On information and belief, during the time that Plaintiffs were employed by Defendants, Defendants did not maintain in the workplace a display containing a copy of New York Labor Law §§ 193, 196-d and any accompanying regulations as required by the New York Labor Law.

66. Plaintiff Saul Lopez Gonzalez was not aware of his right to receive overtime premium pay for employment until on or about August 30, 2007.

67. Plaintiff Wilfredo Matos was not aware of his right to receive overtime premium pay for employment until on or about August 30, 2007.

68. The first time that Plaintiffs met with a lawyer concerning their employment at Euro Diner was on or about August 30, 2007.

C. **ENTERPRISE COVERAGE**

69. On information and belief, Defendant 738 Restaurant Corp. previously did business under the trade name "Starstruck."

70. On information and belief, Defendant 738 Restaurant Corp. began doing business as "Euro Diner" in approximately 2001.

71. On information and belief, Defendant Kapetanos is the Chairman or Chief Executive Officer of 542 3rd Avenue Food Corp., d/b/a Euro Diner, ("Euro Diner 542"), a corporation which is not a party to this action.

72. Euro Diner 542 is located at 542 3rd Avenue, New York, New York 10016.

73. On information and belief, 542 3rd Avenue Food Corp. previously did business under the trade name "Moonstruck".

74. On information and belief, 542 3rd Avenue Food Corp. began doing business as "Euro Diner" in approximately 2001.

75. On information and belief, Defendant Kapetanos is the Chairman or Chief Executive Officer of 126 East 28th Street Food Corp., d/b/a Euro Diner ("Euro Diner 126"), a corporation which is not a party to this action.

76. Euro Diner 126 is or was located at 126 E 28th St, New York, New York 10022.

77. On information and belief, Euro Diner 126 previously did business under the trade name "Moonstruck".

78. On information and belief, Euro Diner 126 is no longer open for business.

79. On information and belief, Defendant Kapetanos is the Chairman or Chief Executive Officer of 449 Restaurant, Inc. d/b/a Moonstruck East Restaurant ("Moonstruck 449"), a corporation which is not a party to this action.

80. Moonstruck 449 is located at 449 Third Ave., New York, New York 10016.

81. On information and belief, Defendant Kapetanos is the Chairman or Chief Executive Officer of 250 East 58th Street Food Corp., d/b/a Moonstruck ("Moonstruck 250"), a corporation which is not a party to this action.

82. Moonstruck 250 is located at 250 East 58th St, New York, New York 10022.

83. On information and belief, Defendant 738 Restaurant Corp., Inc. was at all relevant times part of a common enterprise of chain restaurants in New York City which operated under the names "Euro Diner" and/or "Moonstruck".

84. On information and belief, Euro Diner 542, Euro Diner 126, Moonstruck 449, Moonstruck 250, and Defendant 738 Restaurant Corp. operated under the common control of Defendant John Kapetanos and performed related activities for a common business purpose.

85.     On information and belief, this chain of restaurants was a for-profit enterprise which engaged in commerce that generated more than $500,000 in gross revenues at all times relevant herein.

**FIRST CAUSE OF ACTION**
*Federal Minimum Wage Violations*

86.     Plaintiffs allege and incorporate by reference the allegations in all preceding paragraphs.

87.     At all relevant times, Defendants employed Saul Lopez Gonzalez and Wilfredo Matos within the meaning of 29 U.S.C. § 203(g).

88.     At all relevant times, Defendants were Plaintiffs' employer(s) within the meaning of 29 U.S.C. § 203(d).

89.     At all relevant times, Plaintiffs were Defendants' employees within the meaning of 29 U.S.C. § 203(e).

90.     At all relevant times, Plaintiffs and Defendants were engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. § 206(a).

91.     At all relevant times, Defendant 738 Restaurant Corp. was a part of an enterprise covered by the FLSA as defined by 29 U.S.C. §§ 203(r) and 203(s).

92.     Defendants willfully failed to pay Plaintiff Wilfredo Matos the federally mandated minimum wage of $5.15 per hour, in violation of the Fair Labor Standards Act, 29 U.S.C. § 207(a)(1).

93.     As a result of the foregoing, Plaintiff Matos is entitled to recover from Defendants amounts to be proven at trial for his unpaid minimum wages, an additional amount as liquidated damages, reasonable attorneys' fees, and costs of the action, pursuant to 29 U.S.C. § 216.

**SECOND CAUSE OF ACTION**
*Federal Overtime Violations*

94.     Plaintiffs reallege and incorporate by reference the allegations in all preceding paragraphs.

9

95. Defendants willfully failed to pay Plaintiffs the appropriate overtime compensation for each hour worked in excess of 40 hours in a workweek as required under the Fair Labor Standards Act, 29 U.S.C. § 207 (a)(1).

96. As a result of the foregoing, Plaintiffs are entitled to recover from Defendants amounts to be proven at trial for their unpaid overtime wages, an additional amount as liquidated damages, reasonable attorneys' fees, and costs of the action, pursuant to 29 U.S.C. § 216.

### THIRD CAUSE OF ACTION
*New York State Minimum Wage Violations*

97. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

98. At all times relevant herein, Defendants were Plaintiffs' employers within the meaning of New York Lab. L. §§ 2 and 651.

99. At all times relevant herein, Plaintiffs were Defendants' employees within the meaning of New York Lab. L. §§ 2 and 651.

100. Defendants willfully failed to pay Plaintiff Wilfredo Matos the New York State minimum wage for all hours he worked, in violation of New York Lab. L. § 652.

101. As a result of the foregoing, Plaintiff Matos is entitled to recover from Defendants amounts to be proven at trial for his unpaid minimum wages, an additional amount as liquidated damages, reasonable attorneys' fees, and costs of the action, pursuant to New York Lab. L. § 663.

### FOURTH CAUSE OF ACTION
*New York State Overtime Violations*

102. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

103. Defendants willfully violated Plaintiffs' rights by failing to pay Plaintiffs overtime compensation at a rate not less than one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek, in violation of the New York Minimum

Wage Act and its implementing regulations. N.Y. Lab. L. § 650 *et seq.*; N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2.

104. Due to Defendants' New York Labor Law violations, Plaintiffs are entitled to recover from Defendants amounts to be proven at trial for their unpaid overtime wages, an additional amount as liquidated damages, reasonable attorneys' fees, and costs of the action, pursuant to N.Y. Lab. L. § 663.

**FIFTH CAUSE OF ACTION**
*New York State Payment of Wage Violations*

105. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

106. At all times relevant herein, Plaintiffs were "clerical or other workers" employed by Defendants, as defined in New York Lab. L. § 190.

107. Defendants willfully failed to pay Plaintiffs as required under New York Lab. L. § 191.

108. As a result of the foregoing, Plaintiffs are entitled to recover from Defendants amounts to be proven at trial for their unpaid wages, damages for unreasonably delayed payment of wages, an additional amount as liquidated damages, reasonable attorneys' fees, and costs of the action, pursuant to New York Lab. L. § 198.

**SIXTH CAUSE OF ACTION**
*New York State Spread of Hours Pay*

109. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

110. Plaintiff Saul Lopez routinely worked more than 10 hours a day.

111. Defendants willfully failed to pay Plaintiff Lopez an extra hour of pay at the basic minimum rate for each day Plaintiff worked more than 10 hours ("spread of hours pay"), in violation of New York Lab. L. § 650 *et. seq.*; N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4

112.    As a result of the foregoing, Plaintiff Lopez is entitled to recover from Defendants amounts to be proven at trial for his unpaid spread-of-hours pay, an additional amount as liquidated damages, reasonable attorneys' fees, and costs of the action, pursuant to New York Lab. L. § 663.

### SEVENTH CAUSE OF ACTION
*Quantum Meruit*

113.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

114.    Plaintiffs conferred the benefit of their labor to Defendants in good faith and with the expectation of payment as required under federal and state labor law.

115.    Defendants accepted the benefit of Plaintiffs' work but deliberately failed to compensate them fairly.

116.    Defendants were unjustly enriched by their deliberate and intentional exploitation of Plaintiffs' labor.

117.    As a result of the foregoing, Plaintiffs have been injured, and Defendants have profited thereby, in amounts to be proven at trial.

### TOLLING OF STATUTE OF LIMITATIONS

118.    On the grounds of equitable tolling, the statutes of limitations for all claims asserted by Plaintiffs under the FLSA should be tolled until they first became aware of their rights to receive minimum wage and overtime under the FLSA, on or about August 30, 2007.

### DEMAND FOR TRIAL BY JURY

119.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that this court grant the following relief:

i. Declare Defendants' conduct to be a violation of Plaintiffs' rights under the Fair Labor Standards Act.

ii. Award Plaintiffs minimum wages and overtime compensation due under the Fair Labor Standards Act and an additional equal amount as liquidated damages because of Defendants' willful failure to pay overtime pay, pursuant to 29 U.S.C. § 216;

iii. Award Plaintiffs minimum wages, overtime compensation, and spread-of-hours compensation, pursuant to the New York Minimum Wage Act regulations, and an additional 25% as liquidated damages, pursuant to New York Lab. L. § 663(1);

iv. Award Plaintiffs amounts to be proven at trial for their unpaid wages, damages for unreasonably delayed payment of wages, and an additional 25% as liquidated damages, pursuant to New York Lab. L. § 198;

v. Award Plaintiffs an amount to be proven at trial for Defendants' unjust enrichment from Plaintiffs' labor;

vi. Award Plaintiffs prejudgment interest for amounts awarded under New York law, pursuant to CPLR § 5001 – 5005; and

vii. Award Plaintiffs the costs of this action together with reasonable attorneys' fees and such other and further relief as this court deems necessary and proper.

Dated:   Brooklyn, NY
         January 25, 2008

Respectfully Submitted,

MAKE THE ROAD NEW YORK, INC.
*Attorneys for Plaintiffs*
301 Grove Street
Brooklyn, NY 11237

By: Amy Carroll (AC 5640)
Phone: 718-418-7690 x224
Fax: 718-418-9635

## AUTHORIZATION PURSUANT TO 29 U.S.C. §216(b)

I, SAUL LOPEZ GONZALEZ, hereby consent to be a plaintiff in this lawsuit pursuant to §216(b) of the Fair Labor Standards Act.

Date: December 18, 2007

_____
SAUL LOPEZ GONZALEZ

**AUTHORIZATION PURSUANT TO 29 U.S.C. §216(b)**

I, WILFREDO MATOS, hereby consent to be a plaintiff in this lawsuit pursuant to §216(b) of the Fair Labor Standards Act.

Date: December 18, 2007

_____
WILFREDO MATOS